IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHVILLE DIVISION

| | |
|---|---|
| JOANNA BLONDEAU,<br>individually and on behalf<br>of others similarly situated,<br><br>Plaintiffs,<br><br><br><br><br><br>vs.<br><br>MEDSTREAM ANESTHESIA, PLLC,<br><br>Defendant. | ) <br> ) <br> ) DOCKET NO. 1-23-cv-114-MR-WCM<br> ) <br> ) **MEMORANDUM IN**<br> ) **SUPPORT OF JOINT**<br> ) **MOTION FOR SETTLEMENT**<br> ) **APPROVAL**<br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## INTRODUCTION

Plaintiff Blondeau and 14 opt-in Plaintiffs who signed and filed consents to become parties in this matter ("Plaintiffs") and Defendant MedStream Anesthesia, PLLC ("MedStream," and collectively, "the parties"), seek approval of the parties' settlement of the above-captioned Fair Labor Standards Act ("FLSA") case. As detailed below, this settlement is a fair, adequate, and reasonable resolution of the parties' bona fide disputes. Plaintiffs' nearly unanimous acceptance of their settlement offers further underscores the favorableness of the parties' settlement. The parties therefore respectfully ask this Court to enter an order (1) approving the

1

terms of the parties' settlement as reflected in the parties' agreement (attached hereto as Exhibit A), including settlement payments to Plaintiffs, a $5,000 service award to the Named Plaintiff, $104,166.67 in attorneys' fees and $8,271.41 in costs; (2) retaining jurisdiction of this matter for the purpose of resolving any disputes regarding the disposition of undistributed settlement proceeds; (3) dismissing Plaintiff Pemberton's claims without prejudice, and (4) entering a final order of dismissal with prejudice

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On April 25, 2023, Plaintiff Joanna Blondeau filed this collective action against Defendant Medstream Anesthesia, PLLC under the Fair Labor Standards Act ("FLSA") on behalf of herself and similarly situated Certified Registered Nurse Anesthetists ("CRNAs") alleging it misclassified them as independent contractors and failed to pay proper overtime compensation. (ECF No. 1, Compl.)

On August 3, 2023, the Court issued an Initial Pretrial Order and Case Management Plan, setting the case on a two-phase discovery track based on Plaintiff's intention to seek conditional certification of her proposed FLSA collective. (ECF No. 20.) During the first phase, the parties conducted limited discovery focused specifically on conditional certification issues. Plaintiff took the deposition of Defendant's corporate representative, and the parties exchanged written discovery requests and responses. (Desai Decl. ¶ 3.)

On November 10, 2023, Plaintiff moved for conditional certification. (ECF No. 27.) On March 18, 2024, the Court granted Plaintiff's motion and authorized distribution of notice to the putative collective. (ECF No. 31.) The FLSA collective is defined for conditional certification and related discovery purposes as follows: All CRNAs who worked for either MedStream Anesthesia, PLLC as an independent contractor, or for Pivot Healthcare, as an employee, and who worked over 40 hours in a workweek for at least one week in a hospital or other medical facility that contracted with MedStream between April 25, 2020, and the opt-in deadline. (ECF No. 36.) The opt-in deadline was July 9, 2024, and 15 opt-in Plaintiffs joined the case, and have not withdrawn.

On May 23, 2024, the Court issued a Phase II Pretrial Order and Case Management Plan, setting a November 8, 2024, discovery deadline, December 12, 2024, dispositive motion deadline, and trial for May 12, 2025. (ECF No. 44.) Prior to exchanging additional formal discovery, the parties attended a mediation session.

<u>**OVERVIEW OF SETTLEMENT NEGOTIATIONS AND TERMS**</u>

**I.      SETTLEMENT NEGOTIATIONS**

The parties attended a full-day mediation session on September 11, 2024, with experienced mediator Stephen J. Dunn from Miles Mediation and Arbitration. The parties reached an agreement on material terms at the conclusion of the mediation session and executed a terms sheet. (Desai Decl. ¶ 4.) On September 18, 2024, the

Court granted the parties' request for a stay of pending deadlines through December 5, 2024, to allow the parties to execute a comprehensive settlement agreement and to obtain releases from all 16 Plaintiffs. (Text Order, Sept. 18, 2024.)

After additional weeks of negotiations, the parties executed a comprehensive settlement agreement on October 23, 2024. (Ex. A, Settlement Agreement.)

## II.    KEY SETTLEMENT TERMS

For ease of reference, the parties summarize the key terms of the settlement below; however, the parties' fully executed Settlement Agreement and Release of Claims ("Settlement Agreement") is attached to this motion as Exhibit A.

### A.    <u>Allocation of Settlement Funds</u>

Defendant will pay a total settlement amount of $312,500 to Plaintiffs for the settlement of this case in exchange for Plaintiffs' release of claims.[1] (Ex. A, ¶ 1.) This total settlement amount includes settlement payments to all Plaintiffs, inclusive of Plaintiffs' claims for unpaid overtime, liquidated damages, attorneys' fees and costs, a service payment to Joanna Blondeau ("Named Plaintiff"), and a contingency fund to be used to administer the settlement and or any other reasonable purpose necessary to effectuate the settlement. (*Id.*)

---

[1] Of the $312,500, the amount of $444.14 allocated to the one rejecting opt-in Plaintiff will revert back to Defendant. Rejecting opt-in Plaintiff Pemberton will not release any of their claims against Defendant and will be dismissed without prejudice under the settlement agreement.

From the total settlement amount of $312,500, $104,166.67 was allocated for attorneys' fees, $8,200 for reimbursement of out-of-pocket litigation expenses, $5,000 for the Named Plaintiff Service payment, and $5,000 for the contingency fund. Preliminary settlement allocations for each Plaintiff were calculated using the remaining net settlement fund of $190,133.33. The net settlement fund was apportioned to each Plaintiff on a pro rata basis, based on their individual "invoice" records, which identified the reported number of hours worked by Plaintiffs and amount paid to Plaintiffs on a daily basis. Using this data, alleged overtime damages were determined on a weekly basis based on the number of alleged unpaid overtime hours recorded and each Plaintiff's individual pay rate. Only $71.41 of the contingency fund was used for administering the settlement, and the remaining $4,928.59 was reallocated pro rata to Plaintiffs. Exhibit C reflects each Plaintiff's final allocation.

## B.  Release of Claims

The release for the opt-in Plaintiffs is limited to claims for unpaid wages and overtime under state and federal law arising out of Plaintiffs' work with Defendants in the position of CRNA. (Ex. A, ¶ 12.) The temporal scope of the release is limited to the relevant statutory period up to September 11, 2024—the date the parties' executed the terms sheet. (*Id*.) Specifically, the Claim and Release form executed by each Plaintiff provides the following release:

By signing and returning this Claim and Release Form by **NOVEMBER 24, 2024,** I understand that I and my business entity, if any, through which I contracted with MedStream knowingly and voluntarily release Defendant and its past and present direct and indirect owners and managers, including but not limited to Blue Nine Systems, LLC, Summit Billing Service, LLC, and National Partners in HealthCare, and its and their respective officers, directors, managers, employees, agents, and representatives, from all claims for unpaid wages and overtime under state and federal law, including liquidated damages, attorneys' fees, costs, and interest, arising out of my work with Defendant as a CRNA up to and including September 11, 2024.

(*See* Ex. 3 attached to Ex. A, Settlement Agreement.)

Named Plaintiff Blondeau agreed to a general release of claims in exchange for her settlement payment and the additional $5,000 service payment. (Ex. A, ¶ 13.)

### C. Notice of Settlement and Claim and Release Forms

Plaintiff's counsel disseminated the Notice of Settlement and Claims and Release Forms to each Plaintiff by mail and email on October 25, 2024, a template copy of which is attached as Exhibits 2 and 3 to the Settlement Agreement (Exhibit A).[2] (Desai Decl. ¶ 5.)

The Notice informed each Plaintiff of the total settlement amount, their pro rata allocation amount and how that was calculated, and informed them that to accept their settlement offer they had to execute and return the Claim and Release Form by November 24, 2024. (*See* Ex. 3 attached to the Settlement Agreement (Ex. A).) The

---

[2] Exhibit 1 to the Settlement Agreement (Ex. A) identifies the preliminary settlement allocations that were provided to each Plaintiff in their Claim and Release Form.

Notice informed each Plaintiff that taxes would be withheld from their settlement amount as required by law, advised them that the settlement had to be approved by the Court to take effect, and advised them to contact Plaintiff's counsel with any questions about the settlement. (*Id.*) In addition to sending the Notice of Settlement and Claims Form, Plaintiff's Counsel also sent emails and made phone calls to reach out to Plaintiffs about the settlement. (Desai Decl. ¶ 6.) Of the 16 Plaintiffs and opt-in Plaintiffs in the case, 15 accepted their individual settlement offers. (*Id.* ¶¶ 13, 19.) One opt-in Plaintiff, who had the least amount of alleged damages among all Plaintiffs, rejected their settlement offer. (Desai Decl. ¶ 7.) Under the Settlement Agreement, any Plaintiff who rejects the settlement will not receive any compensation, will not be bound by the release, and their claims will be dismissed without prejudice. (Ex. A, ¶¶ 4, 7.)

### D. <u>Distribution of Settlement Funds and Taxation.</u>

Defendant will pay the total settlement amount no later than thirty-one (31) days after the date the Court approves the Agreement or, if any appeal from the order granting approval is taken, the date when the last of any such appeal is decided or a petition for certiorari is denied. (Ex. A, ¶ 8.)

Each Settling Plaintiff will receive their settlement payment via one settlement check. One half (50%) of each Plaintiff's settlement payment will be reported as nonemployee compensation for tax purposes with each Plaintiff

receiving an IRS Form 1099-NEC as "Non-Employee Compensation." (*Id*. at ¶ 9.) The second half (50%) of each Plaintiff's settlement payment will be reported on an IRS Form 1099-MISC, Box 3, "Other Income." (*Id*.) The Named Plaintiff service payment will be reported on an IRS Form 1099. (*Id*.) Plaintiffs will have 120 days to cash or deposit their checks. Defendant will be cooperative in reissuing any lost, damaged, or stolen checks. (*Id*.) The parties will be responsible for their own tax liability stemming from the settlement payment. (*Id*.)

Finally, no amount of the settlement fund will revert to Defendant, except the amount allocated to the rejecting Plaintiff (Pemberton), which is $444.14. Plaintiff Pemberton will not release any claims, and the parties request her claims be dismissed without prejudice Any residual amount remaining in the settlement fund after distribution to Settling Plaintiffs will be donated to a Legal Aid of North Carolina. (*Id*. at ¶ 11.)

## **ARGUMENT**

## I.  **THE SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF A BONA FIDE DISPUTE.**

Courts within the Fourth Circuit have generally required that FLSA settlements in an action brought by a worker against their employer "be presented to the district court for review and determination that the settlement is fair and

reasonable."[3] *Kirkpatrick v. Cardinal Innovations Healthcare Sols*., 352 F. Supp. 3d 499, 502 (M.D.N.C. 2018) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982).) "A court may only approve an FLSA settlement if the settlement is a fair and reasonable compromise of disputed claims and issues arising from a *bona fide* dispute raised pursuant to the FLSA. *Keeton v. Elite Techs. & Commc'ns, Inc.*, 2022 WL 1497157, at *1 (W.D.N.C. May 11, 2022). In other words, "[t]he Court must ensure: (1) FLSA issues are actually in dispute; (2) the proposed settlement to those issues is fair and reasonable in light of relevant factors from Rule 23; and (3) the proposed attorneys' fees are reasonable, if included in the agreement." *Id.* (quoting *Thaxton v. Bojangles' Restaurants, Inc.*, 2020 WL 6997891, at *2 (W.D.N.C. Mar. 4, 2020).)

## A.  A Bona Fide Dispute Exists

Courts consider the pleadings and the proposed settlement agreement to determine whether there is a *bona fide* dispute as to a defendant's liability under the FLSA.  *Kirkpatrick*, 352 F. Supp. 3d at 502.  "A bona fide dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial." *Mitchell v. Accelerated Claims, Inc.,* 19-cv-710-FDW-DSC, 2021 WL 6882313, at

---

[3] There is a Circuit split about whether judicial approval is mandated for all types of FLSA settlements. *See Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026 (8th Cir. 2019) (citing cases on both sides of the split).

*1 (W.D.N.C. Dec. 30, 2020) (citations omitted). In making this determination, a court looks to the pleadings and proposed settlement agreement. *Id.*

Here, there are certainly FLSA issues in dispute. Plaintiffs allege they were misclassified as independent contractors, thereby being denied overtime compensation due to them under the FLSA. (*See generally*, ECF No. 1, Compl.) Defendant denies it misclassified Plaintiffs and other CRNAs as independent contractors and alleges it paid them properly for all hours worked. (Answer, ECF No. 8 at 18-21.) The parties also disputed whether any alleged violation was willful and therefore the appropriate statute of limitations; whether Defendant could support a good faith defense to liquidated damages; and the proper measure of damages (if any). As such, a bona fide dispute exists. *See Mitchell*, 2021 WL 6882313 at *1 (finding a bona fide dispute existed where the defendant denied the plaintiff's allegations that she was exempt from the FLSA).

## B. The Proposed Settlement is Fair and Reasonable

The negotiated settlement between the parties is also fair and reasonable. While the Fourth Circuit has not directly addressed the factors to consider whether a settlement is fair and reasonable, district courts within this Circuit generally look to factors evaluated for class action settlements under Rule 23(e), such as:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the

probability of plaintiffs' success on the merits and (6) the amount of the settlement in relation to the potential recovery.

*Kirkpatrick*, 352 F. Supp. 3d at 502–03. In evaluating these factors, there is a "strong presumption in favor of finding a settlement fair." *Id*. (quoting *Lomascolo v. Parsons Brinkerhoff, Inc*., 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009).)

        1.  <u>The Parties Exchanged a Sufficient Amount of Discovery</u>

The parties engaged in ample discovery to allow them to appropriately evaluate the risks of litigation and to compute damages. Plaintiffs took the deposition of the company pursuant to Federal Rule of Civil Procedure 30(b)(6), and the parties exchanged documents and written discovery during Phase I discovery. Defendant also produced "invoice" data reflecting time worked and compensation paid for each of the 16 Plaintiffs, which Plaintiffs analyzed in great detail to compute an individualized damages analysis. Accordingly, this factor weighs in favor of approval.

        2.  <u>The Complexity, Expense, and Likely Duration of Litigation Supports Approval</u>

The parties agree that the settlement represents a good value given the risks of continued litigation. If the litigation were to continue, Plaintiffs would face a number of risks before trial that could have limited, or even eliminated their claims, including a decertification motion, and dispositive motions on liability, liquidated damages, and willfulness. A settlement now also eliminates the risk of trying the

case. Absent this settlement, payment for Plaintiffs would have been uncertain and would have taken many more months and potentially years. Such expense and complexity favor approval of the settlement.

### 3. There is No Fraud or Collusion

The negotiations were conducted at arm's length, without fraud or collusion between the parties. The parties reached a tentative settlement during a full-day mediation with third-party neutral Stephen Dunn, Esq. and subsequently spent several weeks negotiating the comprehensive settlement agreement. (Desai Decl. ¶ 8); *Mitchell,* 2021 WL 6882313, at *2 (finding no fraud or collusion where "the parties reached this settlement agreement after extensive negotiations between counsel and, absence evidence to the contrary, there is a presumption that no fraud or collusion occurred between counsel.") (quotation omitted).

### 4. Counsel for Plaintiffs are Highly Experienced

Both parties are represented by experienced attorneys. Plaintiffs are represented by lead counsel Nichols Kaster, PLLP, a nationally recognized law firm that has represented thousands of employees in wage and hour, discrimination, and other types of class and collective actions all over the country including in district courts in North Carolina, as reflected in the Firm Resume attached hereto as Exhibit B. After a thorough factual and legal investigation, Plaintiff's counsel believes the

settlement is a fundamentally fair and reasonable compromise of the disputed claims. (Desai Decl. ¶ 9.)

> 5. <u>The Likelihood of Success on the Merits and the Settlement Amount Supports Approval</u>

The settlement reflects a good recovery for Plaintiffs given the risks of proceeding with the litigation. Plaintiffs will receive an average of $12,974.52, ranging from $942.56 to $72,979.48, depending on the number of alleged unpaid overtime hours during the relevant statute of limitations reflected in each Plaintiff's records. (Desai Decl. ¶ 10.) Plaintiff's settlement allocations (after fees and costs are deducted) represent approximately 63% of each Plaintiff's alleged overtime damages (non-liquidated) calculated by Plaintiff's counsel. The settlement allocations, moreover, were calculated in an equitable manner, taking into account each Plaintiff's individual data of reported hours and pay to calculate their individualized alleged damages. The net settlement fund was then apportioned to each Plaintiff on a pro rata basis.

Under the proposed settlement, Plaintiffs are guaranteed money now rather than having to participate in prolonged litigation on liability and damages issues, where they may not receive anything. Absent settlement, Plaintiffs would have to succeed in proving that Defendant misclassified them as independent contractors. Defendant contests liability, challenges the damages methodology, and disputes that a third year of damages for willful conduct is appropriate and that liquidated

damages should be awarded. This settlement avoids the expense and uncertainty of further litigation, and should be approved.

## II. THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARD

The Court should approve the requested service payment of $5,000 to Named Plaintiff Blondeau. "Courts around the country have approved substantial [service] payments in FLSA collective actions and other employment-related class actions." *Ford v. Cardinal Innovations Healthcare Sols.*, No. 1:20-CV-736, 2022 WL 558376, at *5 (M.D.N.C. Jan. 21, 2022) (citing *DeWitt v. Darlington Cnty., S.C.*, 2013 WL 6408371, at *14 (D.S.C. Dec. 6, 2013) (citing cases).) Courts generally consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (citing *Kirven v. Central States Health & Life Co. of Omaha*, 2015 WL 1314086, at *12 (D.S.C. Mar. 23, 2015).)

Here, the service payment is in recognition of the time and effort Ms. Blondeau expended during the life of this lawsuit. Plaintiff Blondeau worked with counsel for the last year and a half to pursue the alleged overtime claims on behalf of herself and the collective. She was instrumental in initiating the lawsuit by providing key information pre-suit and assisting in the drafting of the complaint. Ms. Blondeau remained engaged throughout the litigation, responding to written discovery requests, providing a declaration in support of conditional certification,

14

and reviewing and signing the settlement agreement. (Desai Decl. ¶ 11.) She also filed this case despite the risk of being the named plaintiff in a case against a former employer in terms of future job prospects. *Ford*, 2022 WL 558376, at *5 (recognizing the named plaintiff's risk in filing suit "knowing that employers may not hire her in the future because she filed a lawsuit against a former employer.") Each Plaintiff benefited from Ms. Blondeau's efforts by obtaining a significant recovery in this action without having to respond to discovery, sit for a deposition, or attend trial. Lastly, the modest $5,000 service payment is an insignificant amount as compared to the $312,500 settlement, only representing 1.6% of the total settlement amount. For all these reasons, the Court should approve the requested service payment.

## III. PLAINTIFF'S COUNSEL'S REQUESTED FEES AND COSTS ARE REASONABLE AND SHOULD BE GRANTED.

"Under the FLSA, [a] court is authorized to award a reasonable attorney's fee to be paid by the defendant, and costs of the action, in addition to any judgment awarded to the plaintiff." *Kirkpatrick,* 352 F. Supp. 3d at 503 (internal quotation omitted) (quoting 29 U.S.C. § 216(b) (2018)). The United States Supreme Court has recognized that without the class/collective action mechanisms, individuals with small claims lack the economic resources to vigorously litigate their rights. Without compensation to those attorneys who are willing to undertake the inherent complexities and unknowns of class and collective action litigation, enforcement of

the federal and state laws would be jeopardized. *See Eisen v. Carlisle and Jacqueline*, 417 U.S. 156, 161 (1974). Thus, attorneys taking on class and collective actions enable litigants to pool their claims, providing a valuable service to the judicial process and society as a whole.

In the Fourth Circuit, attorneys' fees are calculated using either the percentage of the fund method or the lodestar method. *Kirkpatrick,* 352 F. Supp. 3d at 504. "The percentage of fund method provides that the court award attorneys' fees as a percentage of the common fund, while the lodestar method requires the court to determine the hours reasonably expended by counsel that created, protected, or preserved the fund, then to multiply that figure by a reasonable hourly rate." *Id.* (cleaned up).

Under either method, the Fourth Circuit considers twelve factors in determining the reasonableness of the attorney's fees award:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Id.* at 503-04 (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).) Under the Settlement Agreement, Plaintiff's counsel may seek a fee award of up to 33 1/3% ($104,166.67) of the total settlement amount. Under the *Barber* factors, the percentage-of-recovery method used for calculating attorneys' fees in FLSA collective actions is fair and reasonable in this case.[4]

First, Plaintiff's counsel has spent considerable time litigating this case, including but not limited to, investigating the case, drafting and filing the complaint, taking the full-day deposition of the company representative, moving for conditional certification, collecting, reviewing, and producing discovery from Plaintiff, obtaining information from opt-in Plaintiffs about their claims, performing damage calculations and preparing a demand, participating in a full-day mediation and post-mediation negotiations, drafting the settlement agreement, performing the damages allocations, and drafting this motion.  (Desai Decl. ¶ 12.)

Second, litigating a wage and hour case and developing a strategy for a reasonable resolution is not a simple task. The procedural and substantive issues are complex and multifaceted, and the case law regularly evolves due to growing jurisprudence across the country. *See Kirkpatrick*, 352 F. Supp. 3d at 505.

---

[4] Factors 7 (time limitations imposed by circumstances or client), 10 (undesirability of the case within the legal community) and 11 (the nature and length of professional relationship between attorney and client) are not applicable here.

Third, Plaintiff's counsel's experience, and ability to manage complex litigation, aided in positioning the case for a resolution for those who joined. (*See generally* Nichols Kaster, LLP Firm Resume, Ex. B.) Lead counsel, Reena I. Desai, has handled dozens of wage and hour class/collective cases in the last 15 years, many of which dealt with overtime misclassification issues, like in this case. (Desai Decl. ¶ 13.) Plaintiff's counsel's experience, reputation and ability weigh heavily in favor of approval.

Fourth, the opportunity cost in handling this case weighs in favor of approval. Plaintiff's counsel spent significant time and resources in litigating and resolving this case, time that invariably could have been spent on other matters had Plaintiff's counsel not decided to dedicate their time to this cause.

Fifth, the 33 1/3% contingency fee in this case is customary in wage and hour cases like this, weighing in favor of approval. *See Kirkpatrick*, 352 F. Supp. 3d at 505 (recognizing that a 1/3 contingency fee is customary in a similar FLSA case).

Sixth, Plaintiff's counsel's expectations at the outset of litigation supports approval because Plaintiff's counsel took this case on a contingent basis, with a 1/3 contingency, and risked obtaining no fees if no recovery was obtained for Plaintiffs.

Seventh, as explained above, Plaintiff's counsel obtained a reasonable recovery for Plaintiffs—approximately 63% of their alleged overtime damages, after fees and costs are deducted.

Eighth, the requested fee award of 33 1/3% of the total settlement fund is common in FLSA cases like this, thereby favoring approval. *See, e.g.*, *Kirkpatrick*. 352 F. Supp. 3d at 505 ("The requested 33.39 percent award is within the range of percentages that have been approved in other cases in this circuit.") (citing cases). Using a lodestar cross-check, the amount requested is also considerably less than the approximately $204,734 in fees Plaintiff's counsel has expended on this case. (Desai Decl. ¶ 15.)

Finally, Plaintiff's counsel requests $8,200 in out-of-pocket litigation expenses, and an additional amount of $71.41 for postage costs related to administering the settlement. (Desai Decl. ¶ 16.) The additional $71.41 amount would be paid from the contingency fund. Plaintiff's counsel's costs include filing fees and service charges, postage and shipping, deposition transcript fees, mediation costs, research charges, and document retention database charges. (*Id.*) These costs are reasonable, were necessary for successful prosecution of the cases, and should be approved.

## IV. THE COURT SHOULD RETAIN JURISDICTION

The Settlement Agreement states that, assuming the Court approves the settlement, the parties will request the Court retain jurisdiction to resolve any issues on the implementation and enforcement of the Settlement Agreement, if necessary. (Ex. A, at ¶ 6.) Courts within this district have retained jurisdiction in similar cases,

and the parties respectfully request the Court do the same here. *See, e.g.*, *Mitchell*, 2021 WL 6882313, at *4 (regaining jurisdiction to enforce the terms of the FLSA settlement agreement, if necessary).

## CONCLUSION

This settlement is the product of extensive arm's-length negotiation between counsel, which fairly and reasonably resolves a *bona fide* dispute over unpaid overtime wages. The proposed Settlement Agreement and Plaintiff's attorneys' fees satisfy the criteria set by the Fourth Circuit. For these reasons and those set forth above, the Parties jointly and respectfully request that this Court enter an order (1) approving the terms of the parties' settlement as reflected in the parties' agreement (attached hereto as Exhibit A), including settlement payments to Plaintiffs, a $5,000 service award to the Named Plaintiff, $104,166.67 in attorneys' fees and $8,271.41 in costs; (2) retaining jurisdiction of this matter for the purpose of resolving any disputes regarding the disposition of undistributed settlement proceeds; (3) dismissing Plaintiff Pemberton's claims without prejudice, and (4) entering a final order of dismissal with prejudice.

DATED: December 5, 2024

| | |
|---|---|
| **NICHOLS KASTER, PLLP** | **HALL RENDER KILLIAN HEALTH & LYMAN, P.C.** |
| /s/Reena I. Desai | /s/Dana E. Stutzman (w/ consent) |
| Rachhana T. Srey, MN Bar No. 340133 | Dana E. Stutzman |
| Reena I. Desai, MN Bar No. 0388311 | 500 N. Meridian Street, Suite 400 |
| Caitlin Opperman, MN Bar No. 0399978 | Indianapolis, IN 46204 |
| 4700 IDS Center, 80 South Eighth Street | dstutzman@hallrender.com |
| Minneapolis, MN 55402 | |
| Telephone: (612) 256-3200 | Jonathon A. Rabin |
| Facsimile: (612) 338-4878 | 101 W. Big Beaver Road, Suite 745 |
| srey@nka.com | Columbia Center |
| rdesai@nka.com | Troy, MI 48084 |
| copperman@nka.com | jrabin@hallrender.com |
| | |
| **BARRETT LAW OFFICES, PLLC** | Elizabeth P. Sawyer |
| William Barrett, NC Bar No. 19545 | 1425 K Street NW, Suite 920 |
| Joshua M. Krasner, NC Bar. No.19132 | Washington, D.C. 20005 |
| 5 West Hargett St., Suite 910 | |
| Raleigh, NC 27601 | **ROBERTS & STEVENS, P.A.** |
| (919) 999-2799 | Ann-Patton Hornthal |
| wbarrett@barrettlawoffices.com | Post Office Box 7647 |
| jkrasner@barrettlawoffices.com | Asheville, NC 28802 |
| | aphornthal@Roberts-Stevens.com |
| **Counsel for Plaintiff and the FLSA Collective** | **Counsel for Defendant Medstream Anesthesia, PLLC** |

21