**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:23-cv-00114-MR-WCM**

| | | |
|---|---|---|
| **JOANNA BLONDEAU, individually and on behalf of all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **ORDER** |
| **MEDSTREAM ANESTHESIA, PLLC,** | ) ) | |
| **Defendant.** | ) ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the parties' Joint Motion for Settlement Approval [Doc. 65-5].

## I.    PROCEDURAL BACKGROUND

On April 25, 2023, Plaintiff Joanna Blondeau (the "Named Plaintiff") filed a Complaint against Defendant MedStream Anesthesia, PLLC (the "Defendant").  [Doc. 1].  The Named Plaintiff alleged that the Defendant misclassified her and other Certified Registered Nurse Anesthetists ("CRNAs") as independent contractors to avoid paying overtime wages required by the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").  [Id. at ¶¶ 19, 33–34].  On June 20, 2023, the Defendant filed its Answer, denying the Named Plaintiff's allegations.  [Doc. 8 at ¶¶ 19, 33–34].  On

November 10, 2023, the Named Plaintiff filed a Motion for Conditional Certification [Doc. 26], as permitted under the FLSA, 29 U.S.C. § 216(b). On March 18, 2024, the Court conditionally certified a collective action (the "Collective"). [Doc. 31 at 20].

On September 17, 2024, the parties filed a Consent Motion to Stay Pending Deadlines and Notice of Settlement. [Doc. 63]. On September 18, 2024, the Court granted the parties' request for a stay through December 5, 2024, allowing the parties to execute a comprehensive settlement agreement. On December 5, 2024, the parties filed a Joint Motion for Settlement Approval. [Doc. 65-5].

## II.    STANDARD OF REVIEW

Under the FLSA, "when an action is brought by an employee against his employer to recover back wages, the proposed settlement must be presented to the district court for review and determination that the settlement is fair and reasonable." Kirkpatrick v. Cardinal Innovations Healthcare Sols., 352 F. Supp. 3d 499, 502 (M.D.N.C. 2018) (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353–54 (11th Cir. 1982)). To that end, the Court must first assess whether there is a *bona fide* dispute regarding the defendant's alleged liability. Id. A *bona fide* dispute is one in which "there is some doubt whether the plaintiff would succeed on the merits

at trial."  Id. (quoting Hall v. Higher One Machs., Inc., No. 5-15-CV-670-F,

2016 WL 5416582, at *6 (E.D.N.C. Sept. 26, 2016)).

If there is a *bona fide* dispute, "district courts within the circuit have

generally considered the fairness factors a court would consider under

Federal Rule of Civil Procedure 23(e)."  Id. (citing Hoffman v. First Student,

Inc., No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010)).

As such, courts consider:

> (1) the extent of discovery that has taken place; (2)
> the stage of the proceedings, including the
> complexity, expense and likely duration of the
> litigation; (3) the absence of fraud or collusion in the
> settlement; (4) the experience of counsel who have
> represented the plaintiffs; (5) the probability of
> plaintiffs' success on the merits and (6) the amount
> of the settlement in relation to the potential recovery.

Id. at 502–03 (quoting Hargrove v. Ryla Teleservices, Inc., No. 2:11cv344,

2013 WL 1897027, at *2 (E.D. Va. 2013)).  There is a "strong presumption"

in favor of finding that an FLSA settlement is fair.  Id. at 503.

Attorneys' fees in FLSA cases must be reasonable.  Id.  The Fourth

Circuit considers the following twelve factors to determine whether attorneys'

fees are reasonable:

> (1) the time and labor expended; (2) the novelty and
> difficulty of the questions raised; (3) the skill required
> to properly perform the legal services rendered; (4)
> the attorney's opportunity costs in pressing the
> instant litigation; (5) the customary fee for like work;

3

> (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 503–04 (quoting Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)).  Courts in this Circuit have approved attorneys' fees for one-third of a settlement fund.  See, e.g., id. at 505.

Service payments for named plaintiffs in FLSA cases must also be reasonable.  Id. at 508.  To determine if a service payment is reasonable, courts "should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation."  Id. at 507–08 (quoting Kirven v. Cent. States Health & Life Co. of Omaha, No. CA 3:11-2149-MBS, 2015 WL 1314086, at *13 (D.S.C. Mar. 23, 2015)).

## III.    FACTUAL BACKGROUND

From approximately May of 2020 through December of 2022, the Named Plaintiff worked at Hilton Head Hospital as a CRNA on behalf of the Defendant.  [Doc. 8 at ¶¶ 6–7].  The Defendant entered into exclusive

4

contracts with hospitals around the country to provide them with anesthesia related services. [Doc. 27-2 at 36–37]. To fulfill these agreements, it was the Defendant's "business model" to retain CRNAs as independent contractors and to assign them to work in specific contracting hospitals. [Doc. 1 at ¶¶ 16–17; Doc. 27-2 at 76]. As such, the Defendant paid its independent contractor CRNAs a fixed hourly rate, but it did "not pa[y] overtime compensation as defined as time-and-a-half their regular rate for hours over 40." [Doc. 27-2 at 87–88]. The Defendant and the Named Plaintiff's business, Joanna M. Blondeau, P.A., entered into an "Independent Contractor Agreement for Professional Services" that governed the Named Plaintiff's work for the Defendant. [Doc. 27-4]. Initiating this action, the Named Plaintiff alleged that the Defendant misclassified her, and others similarly situated, as independent contractors, and therefore denied them overtime compensation under the FLSA. [Doc. 1 at 1]. Fifteen other CRNAs (collectively with the Named Plaintiff, the "Plaintiffs") opted into the Collective. [Doc. 65-2 at 18].

On September 11, 2024, the parties attended a mediation, where they reached an agreement on material terms and executed a terms sheet. [Doc. 65-1: Desai Decl. at ¶ 4]. On October 25, the Plaintiffs' counsel delivered a Notice of Settlement and Claims and Release Forms to each Plaintiff by mail

5

and email.  [Id. at ¶ 5].  The Notice informed each Plaintiff of the total settlement amount, their pro rata allocation, how their allocation was calculated, and that, in order to accept the settlement offer, they had to execute and return the Claim and Release Form by November 24, 2024. [Doc. 65-2 at 11–17].

The proposed settlement (the "Settlement") states that the Defendant will pay $312,500 (the "Settlement Fund") in exchange for the Plaintiffs' release of claims against the Defendant.  [Doc. 65-2 at 5].  The Settlement Fund includes payments to each Plaintiff, attorneys' fees and litigation costs, a service payment to the Named Plaintiff, and a contingency fund to be used for Settlement administration.  [Id.].  The Plaintiffs' release of claims against the Defendant is limited to claims for unpaid wages and overtime under state and federal law arising from the Plaintiffs' work as CRNAs for the Defendant during the relevant statutory period through September 11, 2024.  [Id. at 7]. The Settlement also states that any Plaintiff who rejects the Settlement will not receive compensation, will not be bound by the release, and his or her claims will be dismissed without prejudice.  [Id. at 5–6].

Accordingly, the parties seek Court approval of the Settlement and to allocate the Settlement Fund to the Plaintiffs as follows: $104,166.67 for attorneys' fees, $8,200 for reimbursement of litigation costs, $5,000 for a

service payment to the Named Plaintiff, $71.41 for Settlement administration costs, and $194,617.78 as payments to the Plaintiffs.[1] [Doc. 65 at 5]. Plaintiff Ashley Pemberton is the only Plaintiff who rejected the Settlement. [Doc. 65-1: Desai Decl. at ¶ 7]. Of the $312,500 Settlement Fund, $444.14 was allocated to Plaintiff Pemberton. [Doc. 65 at 8]. Therefore, under the Settlement, $444.14 of the $312,500 Settlement Fund will revert to the Defendant. [Id.]. Moreover, Plaintiff Pemberton will not release her claims against the Defendant, and the parties request that Plaintiff Pemberton's claims be dismissed without prejudice. [Id.].

The Defendant agrees to distribute the Settlement Fund no later than thirty-one days after the date of Court approval or, if any appeal from the order granting approval is taken, the date when the last of any such appeal is decided or a petition for certiorari is denied. [Doc. 65-2 at 5]. The Defendant will donate any residual amount remaining in the Settlement Fund, after distribution to the Plaintiffs, to an agreed-upon legal aid organization. [Id. at 6].

---

[1] Of the $5,000 allocated for a contingency fund regarding administration costs, the Plaintiffs' counsel spent $71.41 to administer the Settlement. [Doc. 65 at 5]. The parties intend to reallocate the remaining $4,928.59 to the Plaintiffs, pro rata. [Id.]. The parties initially allocated $190,133.33 to the Plaintiffs on a pro rata basis, based on their individual "invoice" records, which identified the reported number of hours worked by the Plaintiffs and amount paid by the Defendant. [Id.]. As such, the total compensation allocated to the Plaintiffs is $194,617.78, ranging in amounts from $942.56 to $72,979.48. [Doc. 65-4 at 2].

7

Reena I. Desai ("Attorney Desai"), one of the attorney's representing the Plaintiffs, states that the parties' "negotiations were conducted at arm's length, without fraud or collusion between the parties," and that "the settlement is a fundamentally fair and reasonable compromise of the disputed claims." [Doc. 65-1: Desai Decl. at ¶¶ 8–9]. Regarding the proposed service payment to the Named Plaintiff, Attorney Desai states that:

> 11. Plaintiff Blondeau worked with counsel for the last year and a half to pursue the alleged overtime claims on behalf of herself and the collective. She was instrumental in initiating the lawsuit by providing key information pre-suit and assisting in the drafting of the complaint. Ms. Blondeau remained engaged throughout the litigation, responding to written discovery requests, providing a declaration in support of conditional certification, and reviewing and signing the settlement agreement.

[Id. at ¶11]. Regarding the attorneys' fees and litigation costs, Attorney Desai states that:

> 12. Plaintiffs' counsel has spent considerable time litigating this case, including but not limited to, investigating the case, drafting and filing the complaint, taking the full-day deposition of the company representative, moving for conditional certification, collecting, reviewing, and producing discovery from Plaintiff, obtaining information from opt-in Plaintiffs about their claims, performing damage calculations and preparing a demand, participating in a full-day mediation and post-mediation negotiations, drafting the settlement

agreement, performing the damages allocations, and drafting this motion.

13. I am lead counsel in this matter and graduated from the University of Minnesota law school in 2007. I have handled dozens of wage and hour class/collective cases in the last 15 years, many of which dealt with overtime misclassification issues, like in this case. I am a frequent lecturer on wage and hour issues, including on such topics as discovery strategies, ethics, wage and hour fundamentals, and mediation.

. . . .

16. Plaintiffs' counsel requests $8,200 in out-of-pocket litigation expenses, and an additional amount of $71.41 in postage costs for administering the settlement from the contingency fund. The total requested amount of $8,271.41 is less than the costs actually incurred. These costs include filing fees and service charges, postage and shipping, deposition transcript fees, mediation costs, research charges, and document retention database charges.

[Id. at ¶¶ 12–16].

## IV. DISCUSSION

### A. The Settlement

The Court begins its analysis with an assessment of the reasonableness of the Settlement. The Plaintiffs alleged that the Defendant misclassified them as independent contractors, and thus denied them overtime compensation under the FLSA. [Doc. 1 at 1]. The Defendant denied these allegations. [Doc. 8 at 2]. Based on the pleadings, there is at

9

least some doubt as to whether the Plaintiffs would succeed on the merits, and therefore, this case involves a *bona fide* dispute.  See Kirkpatrick, 352 F. Supp. 3d at 502.

Moreover, the parties here have conducted discovery and attended mediation; the Settlement stemmed from said mediation; there is no evidence that the Settlement is a product of fraud or collusion; FLSA claims can be complex, and the Plaintiffs' counsel have significant experience handling FLSA claims; Attorney Desai states that the Settlement "reflects a good recovery for Plaintiffs given the risks of proceeding with the litigation"; and, along with the Defendant, fifteen of the sixteen Plaintiffs have agreed to the Settlement.  [Doc. 65-1: Desai Decl. at ¶¶ 8–16].  Given the "strong presumption" in favor of finding that an FLSA settlement is fair and reasonable, the evidence in this case indicates that the Settlement is indeed fair and reasonable.  See Kirkpatrick, 352 F. Supp. 3d at 503.

## B.  Attorneys' Fees & Litigation Costs

The Plaintiffs' counsel accepted this case based on a one-third contingency fee, which presented the possibility of obtaining no fees if the Plaintiffs' counsel did not obtain a recovery for the Plaintiffs.  [Doc. 65 at 18]. Further, the Plaintiffs' counsel have worked on this case for over a year and a half; as stated above, FLSA claims can be complex and require

experienced counsel; the Plaintiffs' counsel have experience with FLSA claims [Doc. 65-1: Desai Decl. at ¶¶ 8–16]; and the attorneys' fees here, one-third of the Settlement Fund, are based on a common calculation in this Circuit. See, e.g., Kirkpatrick, 352 F. Supp. 3d at 505. In regard to the Plaintiffs' counsel's litigation costs, the amount agreed to in the Settlement is slightly less that the amount the Plaintiffs' counsel actually spent on this case. [Doc. 65-1: Desai Decl. at ¶ 5]. Accordingly, based on the factors considered in this Circuit, the attorneys' fees and litigation costs awarded under the Settlement are both reasonable. See Kirkpatrick, 352 F. Supp. 3d at 503–04.

## C. Service Payment

The Named Plaintiff "worked with counsel for the last year and a half to pursue the alleged overtime claims on behalf of herself and the collective. She was instrumental in initiating the lawsuit by providing key information pre-suit and assisting in the drafting of the complaint." [Doc. 65-1: Desai Decl. at ¶ 11]. Moreover, the Named Plaintiff "remained engaged throughout the litigation, responding to written discovery requests, providing a declaration in support of conditional certification, and reviewing and signing the settlement agreement." [Id.].

The other Plaintiffs' litigation burdens were lessened because the Named Plaintiff took the lead in prosecuting this case, and the Named Plaintiff's service payment is for less than two percent of the Settlement Fund.  Therefore, considering "the degree to which the class has benefitted from [the Named Plaintiff's] actions, and the amount of time and effort [she] expended in pursuing the litigation," her service payment is reasonable.  See Kirkpatrick, 352 F. Supp. 3d at 507–08.

### D. Jurisdiction

District courts have discretion to retain jurisdiction in order to enforce settlement agreements.  See, e.g., Norris v. City of Asheville, No. 1:23-CV-00103-MR-WCM, 2024 WL 3746092, at *2 (W.D.N.C. Aug. 9, 2024).  Under the Settlement, however, all claims against the Defendant will be dismissed, and the parties have not offered a compelling reason as to why the Court should retain jurisdiction over this case.  As such, the Court will dismiss the Plaintiffs' claims, and it will not retain jurisdiction over this case.

## ORDER

**IT IS, THEREFORE, ORDERED** that the parties' Joint Motion for Settlement Approval [Doc. 65-5] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Ashley Pemberton's claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the remaining Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

The Clerk of Court is respectfully directed to close this civil case.

**IT IS SO ORDERED.**

Signed: February 5, 2025

Martin Reidinger
Chief United States District Judge